Thomson, J.,
delivered the opinion of the court.
This case comes here by writ of error from an order of the district court denying a petition of Banks & Bros, in the matter of the estate of The Stone & Locke Book and Stationery Company, praying an order of preference in favor of a claim held bj1- them against the estate over claims of other creditors. The facts were agreed upon, and from them it appears that the petitioners were copartners engaged in the law book business in the city of New York, and that The Stone & Locke Book and Stationery Company was a corporation engaged in the book and stationery business in the city of Denver; that in 1892, the petitioners, having a contract with the state of Colorado for the publication of the *218 Colorado State Reports, entered into a contract with the Stationery Company, whereby the petitioners were to keep on sale with the Stationery Company the Reports of the Colorado Supreme Court, and the Reports of the Colorado Court of Appeals; that the company was to sell the books for cash, receiving as its compensation a commission of 5 per cent of the money realized from the sales, aud remitting the balance, as the books were sold, to the petitioners; that in pursuance of this arrangement, and prior to November 4,1893, the petitioners had consigned to the Book and Stationery Company 604 volumes of the reports, upon which there was, in pursuance of the terms of the contract, due to the petitioners from the Stationery Company the sum of $434; that on the 3d day of November, 1893, writs of attachment were levied upon all of the goods, wares and merchandise of the company by certain of its creditors; that on the 4th day of November, 1893, the company made a general assignment for the benefit of all its creditors, and its property thereupon passed into the possession of the assignee ; and that before the filing of the petition in this proceeding the petitioners demanded from the assignee payment of the sum due them. The agreed statement contains the following paragraph :
“That the said Stone & Locke Book and Stationery Company failed to remit said sum of 1434.32, and converted it to their own use and mingled it with the funds of the company; that the said Stone & Locke Book and Stationery Company used the funds with which the proceeds from the sale of the books were mingled and mixed, in the conduct of its business, in paying help, interest and expenses in the management of its business, and in the purchase of new goods and materials. The new goods and materials so purchased were placed in the stock of goods which the said Stone & Locke Book and Stationery Company had on hand for sale, and from the whole stock sold goods as called for by their patrons and customers, and whenever goods and materials were sold, the proceeds thereof were used in the conduct of its business, in paying help, interest *219 and. expenses connected with its said business, and in purchasing new goods and materials, which were placed in said stock; that at the time hereinafter mentioned, and the making of the assignment, there was in said stock a large amount of merchandise, which was invoiced for the sum of about twenty thousand dollars ($20,000), and are the same goods, wares and merchandise hereinafter mentioned as having been attached, and as having passed to the assignee by virtue of said assignment, and said stock included all goods which had been purchased by said Stone & Locke Book and Stationery Company, and which were then on hand.”
We are called upon to determine whether, upon the foregoing facts, the petitioners are entitled to payment of their claim out of the assets of the insolvent estate in the hands of the assignee, before any distribution to other creditors, or whether the character of their claim is such that they are merely general creditors of the estate, entitled only to their pro rata share of what may remain after the claims of the attaching creditors are satisfied. It is entirely clear that the Book and Stationery Company, in selling books consigned to it, was merely the agent of the petitioners, and that the money realized from the sales, after its commission should be deducted, was their property, and became in its hands a trust fund. It is also evident that the mingling and confusion of that fund with its own moneys, thus destroying the identity of the fund, was the unauthorized and wrongful act of the company. These propositions are not controverted, and it is further conceded that if the trust fund can be traced into the property in the hands of the assignee, the petitioners are entitled to the relief prayed. But it is contended b}r counsel for the respondents that inasmuch as the fund was used in the payment of the debts and expenses of the company, it did not go into that property, and was therefore not represented by it. The agreed statement is that the general fund of the company, of which it had by its own unauthorized act made this particular one a part, was used not only in the payment of debts and expenses, but also in the pur *220 chase of new goods and materials which were added to the stock on hand; and that as sales were afterwards made from the entire stock, the money realized was applied by the company to the paj'ment of further debts and expenses, and to the replenishment of its stock bjr the purchase of other new goods; so that at least a portion of the trust fund must have gone directly into the property of the companjr, and remained there in some form until the assignment. This is a feature of the case which the learned counsel for the respondents seem to have entirely overlooked. Now, if a distinction can be taken between the use of the fund in the payment of debts and expenses necessitated by the company’s business, and its use in the purchase of new goods to be added to its stock, so that it may be said that the stock of goods assigned represented nothing but the money which was actually used in their purchase, then it devolved upon the respondents to show how much of the fund in question was used to pay-debts and expenses, and how much went into the stock. It was manifestly impossible for the petitioners to do this, and inasmuch as the fund was wrongfully diverted, the burden of separating the portion which went into the goods from that which went elsewhere was upon the wrongdoers, or the person or persons asserting their title. But in the absence of any evidence on the subject, we are left to the legal presumptions which arise upon the facts as stated. If it be so that the assets in the hands of the assignee cannot be charged with any portion of the - trust fund used by the assignor to pay the debts and expenses of its business, then the presumption of law is that no part of the fund was so used. It will be presumed that in drawing upon the consolidated fund for that purpose, it drew upon its own money, and used its own money, and that all the money of the petitioners was applied in the purchase of goods, and is represented in the company’s assets. In other words, the presumption, in the absence of evidence, is that the petitioners’ money was applied where it can be reached, and not where it cannot be reached. The principle which we are endeavoring to embody in language is *221 indicated in the opinion in Hall v. Otis, 79 Me. 122, thus: “ The question here is, what is the presumption when one makes a draft from a fund composed partly of his own money, and partly of money of another? We think the presumption is, the draft was intended to be made, and was made from the drawee’s own fund.” The respondents concede that the fund from which the debts and expenses were paid belonged partly to the company; and, in so far as it may be necessary for the protection of the petitioners’ interest in the fund, the presumption is that the payments came from its own share, and that therefore the whole of the money of the petitioners went into the stock.
It is unnecessary for any purpose of this decision to discuss the proposition of counsel, that where an agent or trustee has wrongfully used or appropriated the money of another in the payment of the debts or expenses of his business, the money cannot be followed into his estate, because there is nothing in the admitted facts showing that in this instance such was the case, and the presumption is to the contrary; and also because the record does not advise us when these debts and expenses were incurred. It occurs to us, however, that the necessary expense of carrying on a business is as much represented in the property belonging to the business as money used in the purchase of the property. A merchant must, in fixing the selling price of his goods, if he expects to be able to continue in business, take into consideration the expenses of his business as well as the cost of his goods, in order that when his stock is sold both expense and cost may be returned to him. The money received for each article sold would represent that article’s share of the entire cost of the stock, and also of the entire expense of the business, together, presumably, with a profit superadded; and the value of the whole stock would be the sum total of expense, cost and profit. These several elements would be included in the selling price of the goods, and the property would directly represent each and all of them. We are therefore inclined to the opinion that it would be immaterial whether *222 the money of the petitioners was used in the purchase of goods, or in the payment of the expenses of the business, provided the expenses were incurred after the money was received. It seems to us that in either case the property would represent the fund, and the fund would be a preferred charge upon it. But, the evidence respecting this matter of debt and expense being deficient, the case is controlled by the presumption of which we have spoken.
The fact that there was a continual change taking place in the stock, by the sale of the goods and the replacing of them with others, does not, in our opinion, complicate the situation. From the time of the first misuse made by the company of the trust fund to the date of tne assignment, the stock may have been several times changed bjr sales and purchases, yet this.fund remained in the business to the last. It was represented to its full amount in the property assigned, and is now present in the assets in the hands of the assignee. So long as the fund was employed in the business, it is immaterial what changes in the identity of the property representing it took place. Through all the changes which occurred, the fund was, and still remains, a charge upon the property. Frelinghuysen v. Nugent, 36 Fed. Rep. 229; Bank v. Weems, 69 Tex. 489; Cavin v. Gleason, 105 N. Y. 256.
The liens which the attaching creditors acquired by their attachments are without effect as against the claim of the petitioners. They could operate only on the title which the Book and Stationery Company had when the writs were levied, and the estate must be subjected to the payment of the amount due the petitioners before anything can be realized upon the attachments. Gates Iron Works v. Cohen, 7 Colo. App. 341.
Upon the agreed facts the petitioners were entitled to an order directing the assignee to pay them the amount of their claim out of the proceeds of the estate prior to any payments to the attaching creditors, and the judgment will be reversed with instruction to the district court to enter an order in conformity with this opinion.

Neversed.